UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

SAMARITAN HEALTH CENTER,

        Plaintiff,

        v.                              Case No. 02-C-0387

THE SIMPLICITY HEALTH CARE PLAN,
SIMPLICITY MANUFACTURING, INC.,
FIRST HEALTH BENEFITS ADMINISTRATORS
CORP.,

        Defendants.

DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST
CLAIMS OF SAMARITAN AND DENYING MOTION FOR SUMMARY JUDGMENT
AGAINST CROSS-CLAIM OF SIMPLICITY AND THE PLAN

        In October 1995, Mary Ann Bowe was admitted to plaintiff Samaritan Health
Center's skilled nursing facility. Initially, defendants paid for Bowe's stay, but after about three
weeks of care they denied further claims for payment. Samaritan, as assignee, brought this
lawsuit under the Employee Retirement Income Security Act (ERISA) to recover welfare
benefits allegedly owed to Bowe. Defendants Simplicity Health Care Plan (the "Plan") and
Simplicity Manufacturing, Inc. (Simplicity) cross-claimed against defendant First Health
Benefits Administrators Corp. for indemnification pursuant to contract. Defendant First Health
moves for summary judgment against both Samaritan's claim and Simplicity and the Plan's
cross-claim.[1]

---

[1] Samaritan brought two claims: one for recovery of benefits and one for breach of fiduciary duty.
(Compl. at 7-13.) The fiduciary duty claim was dismissed by this court on an unopposed motion because the
statute of limitations for the claim had expired. Thus, the claim for benefits is the only remaining claim in the
primary case.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating it is entitled to summary judgment. *Id.* at 323. Once that burden is met, the nonmoving party must designate specific facts to support or defend each element of its cause of action, showing that there is a genuine issue for trial. *Id.* at 322-24. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. To establish that a question of fact is "genuine," the opposing party must present specific and sufficient evidence that, if believed by a jury, would actually support a verdict in its favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In their opposition brief, Simplicity and the Plan state that for purposes of the pending summary judgment motion, "First Health must accept as accurate the allegations in the Cross Claim." (Br. of Simplicity & Plan in Opp'n at 1.) Simplicity and the Plan

2

misunderstand the procedural rules.  At the summary judgment stage, allegations in pleadings are not enough.  When a summary judgment motion is supported with evidence, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Unless an allegation has been admitted in an answer, it is no defense to a summary judgment motion.

## UNDISPUTED FACTS

Simplicity established a welfare benefit plan, subject to ERISA, which provided medical benefits as well as prescription drug, dental, vision, and sickness and accident benefits.  (Compl., Ex. 1, at 72[2]; FHB Proposed Finding of Fact (FHB PFOF) ¶ 2.[3])  The plan was named "The Simplicity Health Care Plan."  (Compl., Ex. 1 at 72.)  All benefits under the Plan were "self-funded and paid directly from the general assets of the plan sponsor."  (*Id.*)

Simplicity was the named "Plan Sponsor" and "Plan Administrator" in the "Medical Plan Document" dated January 1, 1994.  (Compl., Ex. 1, at 64, 71; FHB PFOF ¶ 3.) The Medical Plan Document defined the term "Plan Administrator" as follows:

> Simplicity Manufacturing, Inc. is the named fiduciary of the plan, and is the Plan Administrator with the authority to control and manage the operation and administration of the plan.  The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law.  For this purpose, the Plan Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

---

[2]Exhibit 1 to the Complaint is the Medical Plan Document dated January 1, 1994.  The court will cite to it as "Compl., Ex. 1," but refer to it in text at the Medical Plan Document.

[3]Neither the Plan, Simplicity, nor Samaritan objected to First Health's proposed findings of fact. "In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out."  Civil L.R. 56.2(e).

(a) To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan, including the establishment of any claims procedures that may be required by applicable provisions of law;

(b) To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;

(c) To decide, within its discretion, all questions concerning the Plan and the eligibility of any person to participate in the Plan;

(d) To appoint such agents . . . and other persons as may be required to assist in administering the Plan; and

(e) To allocate and delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan, any such allocation, delegation or designation to be in writing.

(Compl., Ex. 1 at 64; FHB PFOF ¶ 5.)

Simplicity "engaged the services of certain organizations to provide claims administration services." (Compl., Ex. 1 at 72; FHB PFOF ¶ 6.) First Health was a named third-party claims administrator in the Medical Plan Document. (Compl., Ex. 1 at 57, 72; FHB PFOF ¶ 7.) The Medical Plan Document defined "Claims Administrator" as follows:

The *claims administrator* for the plan is First Health Strategies, Inc.,[4] the organization retained by the *plan administrator* to provide claims administration services to the plan. Although claims determinations will routinely be performed by the *claims administrator*, the *plan administrator* retains ultimate authority to interpret plan terms and make determinations regarding eligibility and benefits.

---

[4]Defendant First Health does not argue that it is not the same entity as or is not liable for the actions of First Health Strategies, Inc.

4

(Compl., Ex. 1 at 57; FHB PFOF ¶ 9.)

The Medical Plan Document stated that "[i]n general, the plan is self-administered by Simplicity." (Compl., Ex. 1 at 72.) However, "Simplicity has engaged the service of certain organizations to provide claims administration services." (*Id.*) The Medical Plan Document identified that medical benefits would be adjudicated by First Health, in conjunction with Associates for Health Care. (*Id.*; FHB PFOF ¶ 8.)

If a participant did not agree with a denial of benefits, he or she had "the right to ask the plan to review the claim." (Compl., Ex. 1 at 69.) Participants were directed by the Medical Plan Document to mail any appeal or request for review to First Health Strategies (TPA), Inc. in Kentucky. (*Id.* at 49-50; FHB PFOF ¶ 10.) Participants were directed to contact the plan administrator with any questions about the Plan. (Compl., Ex. 1 at 70.)

The Medical Plan Document identified the designated agent for service of legal process as Simplicity. (*Id.* at 71.)

Simplicity, as plan sponsor and administrator of the Plan, and First Health entered into a Master Services Agreement (MSA), effective from January 1, 1996, to December 31, 1999. (Norton Aff., Exs. 1 & 2, at 1; FHB PFOF 11.) The MSA provided that First Health was to perform its services "in accordance with the terms of the Plan." (Norton Aff., Ex. 1, ¶ 1.) It stated further:

> FIRST HEALTH is engaged to perform the services under this Agreement as an independent contractor and not as a fiduciary of the Plan or as an employee or agent of [Simplicity]. FIRST HEALTH shall have no final discretionary authority or control over the management or disposition of Plan assets, and no authority over or responsibilities for Plan administration. Because FIRST HEALTH is neither the Plan Sponsor or Administrator, nor a provider of health care services to Plan participants or

5

<blockquote>
beneficiaries (collectively "claimants"), FIRST HEALTH shall have no responsibility for: (a) any funding of Plan benefits . . . .
</blockquote>

(Norton Aff., Ex. 1, ¶ 3; FHB PFOF ¶ 13.) The parties acknowledged in the MSA that Simplicity, not First Health, had final discretionary authority to determine what benefits would be paid by the Plan. (Norton Aff., Ex. 1, ¶ 5.)

The MSA's Services and Fees Exhibit provided that First Health was to conduct the claims review and appeals procedures "in accordance with Plan provisions" and that First Health was to advise the plan administrator, i.e., Simplicity, of all appeals of denied claims for the plan administrator to make the final benefits determinations. (Norton Aff., Ex. 1, Services & Fees Ex. ¶ II.B.7; FHB PFOF ¶ 14.) Other services provided by First Health under the MSA included providing information on plan eligibility and benefits to all participants, verifying eligibility and "calculating amounts payable under the Plan in light of Plan provisions," mailing explanations of benefits and benefits checks, and seeking reimbursement of overpayments of plan benefits. (Norton Aff., Ex. 1, Services & Fees Ex. ¶ II.A & II.B.)

In the MSA, First Health and Simplicity agreed that each would be responsible for its own acts and omissions and each would indemnify the other against any claims arising out of its own acts or omissions. (Norton Aff., Ex. 1, ¶ 5.) Simplicity agreed to defend and indemnify First Health against any claim relating to the Plan unless the claim arose from First Health's breach of its obligations under the MSA. (*Id.*)

Simplicity and the Plan named Dr. Bruce Herman as an expert in this case. First Health submits Dr. Herman's expert report as support for its summary judgment motion. In his report, Dr. Herman states that he reviewed the plan language, Bowe's medical records, notes from Samaritan and two doctors, and First Health's denial of benefits. (Tidwall Aff., Ex.

2 Report at 1-2.) He then opines that Bowe needed skilled nursing from October 27, 1995, through November 7, 1995, but that after November 7, 1995, Bowe needed custodial care rather than skilled nursing care, as defined in the plan language. (*Id.* at 2-3.)

### MOTION FOR SUMMARY JUDGMENT AGAINST SAMARITAN

Against Samaritan's claim for payment of benefits under 29 U.S.C. § 1132(a)(1)(B), First Health argues that it is not a proper party defendant. According to First Health, Samaritan may sue the Plan and possibly the employer, but not a third-party claims administrator.

Section 1132(a)(1)(B) permits a suit to recover benefits due under an employee welfare benefit plan. The parties do not dispute that The Simplicity Health Care Plan is an employee welfare benefit plan as defined in the statute.

"The most appropriate defendant for a beneficiary's § 1132(a)(1)(B) denial of benefits claim is the employee welfare benefit plan itself." *Rivera v. Network Health Plan of Wis., Inc.*, No. 02-C-1055, 2003 WL 22794439, *6 (E.D. Wis. July 11, 2003) (Griesbach, J.); *see Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) ("[I]t is silly not to name the plan as a defendant in an ERISA suit."); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). Moreover, employee welfare benefit plans are suable entities. 29 U.S.C. § 1132(d)(1).

First Health argues in its initial brief that because it is not the Plan it cannot be sued for ERISA benefits, citing *Jass*, *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549 (7th Cir. 1997), and *Lampen v. Albert Trostel & Sons Co. Employee Welfare Plan*, 832 F. Supp. 1287 (E.D. Wis. 1993) (Reynolds, J.), for that proposition. (First Health's Br. in Supp. at 10-11.) Those cases do suggest that a plan is the only suable entity. For instance, the

Case 2:02-cv-00387-CNC   Filed 03/31/06   Page 7 of 21   Document 58

*Jass* court stated that ERISA permits benefits suits "only against the Plan as an entity," 88 F.3d at 1490, and the *Riordan* court reiterated that statement, 128 F.3d at 551. Also, the *Lampen* court stated, although without citation, that because a claims administrator similar to First Health was not the plan entity it could not be sued under 29 U.S.C. § 1132(a)(1)(B). 832 F. Supp. at 1289.

However, *Jass* and *Riordan* do not provide the bright-line rule First Health desires. Notwithstanding the *Jass* language quoted above, the Seventh Circuit has not mandated that the plan *alone* can be sued. *Rivera*, 2003 WL 22794439, at *8 n.6. The *Riordan* court declined to dismiss a benefits claim against an employer because the plan documents referred to the employer and the plan interchangeably and the company was the plan's agent for service of process. 128 F.3d at 551.

Further, the statements in *Jass* and *Riordan* were refined or clarified in *Mein*. (Counsel should have cited *Mein* in its initial brief.) The Seventh Circuit noted that the proposition that the plan alone can be sued "is much less firmly established than the defendants would have us believe." 241 F.3d at 584. The court found that when a plan and employing company are "closely intertwined," the employer may be sued instead of or in addition to the plan. *Mein*, 241 F.3d at 584-85. Mein was permitted to continue suit against both the employer and plan because the summary plan description referred to the two interchangeably, the employer was the administrator of the plan as well as the designated agent for service of legal process, and a plan trustee used employer stationery for correspondence. 241 F.3d at 585.

District Judge Griesbach examined thoroughly the question of who may be sued for ERISA benefits and found that even a health maintenance organization providing group

health benefits could be sued under § 1132(a)(1)(B).  *Rivera v. Network Health Plan of Wis., Inc.*, 320 F. Supp. 2d 795, 798 (E.D. Wis. 2004).  Judge Griesbach found *Jass* to be weak support for the proposition that the plan is the only proper defendant observing even though the *Jass* court *said* ERISA permitted suits against the plan only, the court actually *held* that Jass could sue PruCare, the plan administrator, rather than the plan.  *Id.* at 798-99.  He noted that other circuits allowed plaintiffs to sue plan administrators for benefits.  *Id.* at 799.  Further, he discussed in detail several district court opinions in which a plaintiff was permitted to sue an administrator or insurance company, even if not officially named as plan administrator in the plan documents, provided the entity controlled (1) the determination of claims to pay and (2) the actual payment of benefits.  *Id.* at 799-801.  Because it appeared that the HMO in *Rivera* was the party that paid benefits and determined whether benefits would be paid, Judge Griesbach did not dismiss the claim against it, especially as the existence of a plan to sue was unclear.

Similarly, two courts in the Northern District of Illinois have read Seventh Circuit precedent to allow benefits lawsuits against plan administrators, even if they were not so designated in the plan documents.  In *Madaffari v. Metrocall Cos. Group*, No. 02-C-4201, 2004 WL 1557966, *3 (N.D. Ill. July 6, 2004), District Judge St. Eve read *Mein* to allow suits against the decision-making entity.  She refused to dismiss claims against an insurance company where the insurance policy was the Plan's only asset and the insurer in general decided whether disability benefits would be terminated and had decided against the plaintiff on her claim for disability benefits.  *Id.* at *1, *3-*4.  Further, the insurer was responsible for disbursement of benefits.  *Id.* at *1. Even though the plan's summary plan description named the employer's director of human resources as plan administrator, the court found that the

9

insurer was the party legally responsible for determining and paying benefits and thereby a proper party for suit. *Id.* at *4-*5.

In *Penrose v. Hartford Life & Accident Insurance Co.*, No. 02-C-2541, 2003 WL 21801214, *3 (N.D. Ill. Aug. 4, 2003), District Judge Lefkow commented that the "*Jass* dictum is no longer good law if it ever was." She ruled that an insurer was a proper defendant in an ERISA benefits lawsuit where the identity of the plan was unclear and the insurer administered the plan, was the final decision-maker regarding benefits, and paid for benefits. *Id.* at *1, *3. Judge Lefkow noted that the Congressional purpose behind § 1132(a)(1)(B) was that a party legally responsible for paying benefits governed by ERISA can be sued to pay for them. *Id.*[5] Therefore, the key to whether First Health may be sued in this case is not simply whether First Health is a third-party claims administrator, but whether it is "closely intertwined" or interchangeable with the Plan and whether it controls benefits determinations and payments.

A review of the Medical Plan Document shows that First Health cannot be sued for benefits under the Plan. Simplicity, not First Health, was the named Plan Sponsor and Plan Administrator and was given the authority to control administration of the plan. Although as claims administrator First Health did make routine benefits determinations, the Medical Plan Document stated that "the *plan administrator* retains ultimate authority to interpret plan terms and make determinations regarding eligibility and benefits." (Compl., Ex. 1 at 57; FHB PFOF ¶ 9.) Consequently, First Health's control over benefits determinations was

---

[5]This court finds *Lampen* unpersuasive because of its lack of discussion and lack of any citation for the statement that because the claims administrator was not the plan it could not be sued. In addition, it predates *Jass*, *Riordan*, and *Mein*.

circumscribed.  Further, although appeals of benefit denials were to be mailed to First Health, nothing in the Medical Plan Document indicates that First Health rather than Simplicity decided the appeals.

Importantly, the plan was self-funded and benefits were to be "paid directly from the general assets of the plan sponsor" (Compl., Ex. 1 at 72), i.e., from Simplicity rather than First Health.  Participants were directed to contact the Plan Administrator with any questions about the plan.  Further, Simplicity was the designated agent for service of legal process.

The MSA confirms that First Health had no final discretionary authority or control over Plan assets and that First Health was to advise Simplicity of all appeals of denied claims for Simplicity's determination.

Thus, although First Health may have made routine determinations regarding whether benefits would be paid, Simplicity, not First Health, paid benefits, retained ultimate authority regarding benefits determinations, and was the designated agent.  First Health was not so "closely intertwined" or in control of the Plan such that it is interchangeable with the Plan for lawsuit purposes.

Samaritan maintains that First Health actually denied the claim and failed to notify Simplicity of the claim or appeal.  There are two problems with this argument.  First is, no evidence in the record regarding who decided Samaritan's claim or appeal.  In its proposed findings of fact, Samaritan cites only to allegations in the cross-claim and a denial in First Health's answer to the complaint.  In First Health's answer, it denies that it made the final decision regarding benefits, asserting that it made a recommendation instead.  (First Health Answer ¶ 25; *see* Compl. ¶ 25.)   At the summary judgment stage, more than allegations and denials must be presented.  Second, whether First Health denied Samaritan's

benefits improperly rather than referring the claim or appeal to Simplicity does not matter for purposes of the court's decision. The Medical Plan Document provides, and the MSA confirms, that Simplicity, not First Health, retained ultimate authority regarding benefits determinations. No one has suggested that First Health usurped Samaritan's role regularly, and one instance of overstepping authority does not necessarily warrant naming First Health as a defendant for an ERISA benefits claim. Moreover, Simplicity was still the payer of any benefits and the designated agent for legal process. The possibility that First Health exceeded its authority one time does not establish a close intertwining or control over benefits and payments that justifies naming First Health as defendant in this lawsuit. Moreover, with Simplicity and the Plan as named defendants, there is no concern that if Samaritan is successful the remaining parties cannot provide the required relief. Therefore, the motion for summary judgment against the claims of Samaritan will be granted. Further, considering the merits of Samaritan's claim, its arguments for summary judgment are irrelevant. Regardless, its summary judgment motion could be denied as untimely. Also, if First Health is not a proper defendant for the ERISA benefits claim, no analysis of the merits is necessary.

MOTION FOR SUMMARY JUDGMENT AGAINST SIMPLICITY AND THE PLAN

Simplicity and the Plan filed a cross-claim against First Health. They assert that the MSA required First Health to advise Simplicity of all appeals of denied claims for Simplicity to make the final benefit determination, but First Health failed to inform Simplicity of Samaritan's claim and appeal. (Simplicity & Plan Answer & Cross-Claim at 11-12.) Simplicity and the Plan assert that if they are found liable to Samaritan, pursuant to the MSA, First Health must indemnify them. (*Id.* at 12-13.)

First Health maintains three alternate arguments against the cross-claim: (1) it is preempted under ERISA's conflict preemption provision, (2) Simplicity and the Plan cannot establish any causation or damages, and (3) indemnification of Simplicity and the Plan is void as against public policy.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). State common law and court decisions qualify as "State law" for purposes of § 1144. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 773-82 (7th Cir. 2002) (discussing whether common law fraud claim was preempted by ERISA).

Twenty years ago the Supreme Court first said that "relate to" was to be interpreted broadly. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *Jass*, 88 F.3d at 1492-93, and that preemption extended to any state law cause of action having a connection with or reference to an ERISA plan, even if the state law was not designed to apply to or affect such a plan and even if the law's effect was indirect, *Pilot Life Ins. Co.*, 481 U.S. at 47-48; *Jass*, 88 F.3d at 1493. First Health, of course, cites *Pilot Life* for the argument, at first glance convincing, that the cross-claim is preempted because the MSA on which Simplicity and the Plan sue references the Plan numerous times and has an obvious connection with the Plan.

However, the Supreme Court later backtracked from such a broad, literal reading of § 1144(a) and the "reference to" or "connection with" test, finding that determining a "connection with" a plan was no more specific that determining a "relation to" a plan:

13

> [T]his still leaves us to question whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995); *see Biondi*, 303 F.3d at 773 (stating that with *Travelers* the "tide began to turn" toward a more restrictive view of § 1144(a)). In other words, analysis of ERISA's objectives is required to determine whether a state law or claim is preempted under § 1144(a).[6]

Further, the Supreme Court in *Travelers* recognized that its prior, literal test seemed to stray from the starting presumption for preemption analysis that Congress does *not* intend to supplant state law. See 514 U.S. at 654-55; *DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 (1997). Also, the Court noted that preemption does not extend to a state law having only a tenuous, remote or peripheral connection with a plan, as is the case with many laws of general applicability. *Travelers*, 514 U.S. at 661.

Regarding consideration of ERISA's objectives for preemption purposes, the statute's primary objectives are to protect the interest of plan participants and beneficiaries by requiring disclosure and reporting of financial information; establishing standards of conduct and obligations for fiduciaries of employee benefit plans; and providing appropriate remedies, sanctions, and access to federal courts. *Biondi*, 303 F.3d at 774. In addition,

---

[6]While the Supreme Court discussed its "'objectives' principle" regarding only the "connection with" portion of the prior test, the Seventh Circuit has found that analysis of ERISA's objectives is required regardless of whether the state law is being characterized as one having a "reference to" or a "connection with" an ERISA plan. *Biondi*, 303 F.3d at 776 n.8.

14

Congress intended to subject plans and their fiduciaries to a uniform body of benefits law and minimize the administrative and financial burden of complying with different states' laws and being subject to conflicting state laws. *Id.*

The Supreme Court has identified at least three instances where a state law is preempted: (1) when the law mandates employee benefit structures or administration, (2) when it binds employers or plan administrators to particular choices or precludes uniform administrative practices, or (3) where it provides an alternative enforcement mechanism to ERISA. *Biondi*, 303 F.3d at 775 (citing *Travelers*, 514 U.S. at 658-60). In regard to state law claims, the Seventh Circuit has indicated that ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan. *Id.* at 780.

In *Biondi* an ERISA plan sued a participant for fraud under state law. The participant had been ordered as part of a divorce to obtain and pay for COBRA coverage for his ex-wife. After the divorce, the ex-wife was no longer eligible for dependent care coverage under Biondi's employer's ERISA plan. However, instead of obtaining COBRA coverage Biondi failed to notify the plan that he and his wife had divorced and instead kept her listed as his spouse for several years. During that time, the plan paid medical bills of over $120,000 on the ex-wife's behalf. After learning of the deception, the trustees of the plan sued Biondi for common law fraud to recover the amount paid on the ex-wife's behalf. 303 F.3d at 769-70. Biondi argued that the fraud claim was preempted by ERISA because it related to the ERISA plan. *Id.* at 772.

The Seventh Circuit rejected Biondi's argument and found that the fraud claim was not preempted. The court noted that because common law fraud was a traditional area of state regulation, Biondi bore the burden of overcoming the starting presumption of no

15

preemption. *Id.* at 775. It then found that the plan's lawsuit to recoup monies improperly spent as a result of a participant's fraudulent conduct not only did not thwart ERISA's objectives and instead furthered them by protecting plan integrity and allowing the fiduciaries to fulfill their obligations. The court found that there would be no conflicting directives imposed on the plan due to different states' laws, so no threat to national uniformity existed. No impact on plan administration or choices existed. *Id.* And finally, the fraud claim was not a replacement for an ERISA enforcement provision and did not rely on the existence of a plan as an element of the cause of action. *Id.* at 776-78.

Here, the contract on which Simplicity and the Plan sue appears to "relate to" the Plan. The MSA references the Plan numerous times. The very basis of First Health's relationship with Simplicity and the Plan is the Plan, because without the Plan, First Health would not have claims to administer. The MSA states that it is made between First Health and Simplicity as plan sponsor and administrator of the Plan. (Norton Aff., Ex. 1, introduction.) The contract states that First Health was to perform its services "in accordance with the terms of the Plan." (*Id.* ¶ 1.) In describing the administrative services First Health would perform, the contract states that First Health was to send participants plan information; verify eligibility and calculate payments due under the plan; mail explanations of benefits and payment checks due under the plan; and, most pertinent to the cross-claim, conduct the claims review and appeals procedure in accord with plan provisions. (*Id.*, Services & Fees Ex. ¶ II.A., II.B.)

But contract law claims are, undisputedly, a traditional area of state law. Thus, First Health bears the burden of overcoming the presumption that the cross-claim is not preempted. Further, state contract law is of general application. The common law regarding

16

contract claims obviously has no specific reference to ERISA or to an ERISA plan. *See, e.g.*, Wis. JI-Civil 3010 *et seq.* (pattern jury instructions regarding contracts under Wisconsin law). Thus, the state law claim does not rely on the existence of an ERISA plan as an element.

Nor does the contract claim at issue rely on an interpretation of the Medical Plan Document. Although the MSA states that First Health will conduct the claims review and appeals procedure "in accordance with Plan provisions" (Norton Aff., Ex. 1, Services & Fees Ex. ¶ II.B.7), that statement does not mean the Plan must be interpreted in any way. A state law claim is not preempted by ERISA merely because it requires a cursory examination of an ERISA plan's provisions. *Biondi*, 303 F.3d at 780. Here, the Medical Plan Document stated only that if a participant did not agree with a denial, he or she had "the right to ask the plan to review the claim." (Compl., Ex. 1 at 69.) To appeal a denial of benefits, a plan participant was directed by the Medical Plan Document to mail the request for review to First Health Strategies (TPA), Inc. in Kentucky. (*Id.* at 49-50; FHB PFOF ¶ 10.) However, the Medical Plan Document set forth no further procedure for appeals. Any such procedure appears in the MSA: "FIRST HEALTH shall advise the Plan Administrator of all appeals of denied claims and the Plan Administrator shall make all final benefit determinations in such cases." (Norton Aff., Ex. 1, Services & Fees Ex. ¶ II.B.7.) The MSA, not the Medical Plan Document, required First Health to notify Simplicity about appeals of denied claims. Thus, the failure about which Simplicity and the Plan sue requires only an interpretation of the MSA.

Most importantly in light of *Travelers*, permitting the cross-claim in no way thwarts ERISA's objectives; instead, it furthers them. As was the case in *Biondi*, this is a claim by the plan or its administrator to recover monies, protecting the financial integrity of the plan for the benefit of participants and beneficiaries. Also, as in *Biondi*, it is in a plan's interest

17

to be able to enforce its rights against those whom it cannot sue under ERISA. As the *Biondi* court noted, ERISA's civil enforcement provisions, 29 U.S.C. §§ 1132(a)(1)-(9) do not provide a remedy for situations where a plan suffers damages by a non-fiduciary. 303 F.3d at 782. Section 1132(a) permits suits for legal relief only against ERISA plans, administrators, or fiduciaries. *See id.* Congress cannot have intended that a plan would have no legal remedy for damages by third-party servicers it hired.

Nor does there really exist an issue of inconsistent application of state laws. To the extent that third-party servicers perform discretionary duties and qualify as fiduciaries, those parties are already encompassed by the uniform federal law. While at first it might seem appealing to seek a uniform body of federal law regarding the relationships between plans and non-fiduciary third-parties that administrators may hire to perform certain administrative functions, why should the hiring of a non-fiduciary claims administrator differ from the hiring of a non-fiduciary accountant or lawyer? In any event, a contract will generally be governed by the law of the state that the parties choose or as determined by conflict of laws analysis rather than the laws of multiple states. For these reasons, the court finds that the cross-claim is not preempted.[7]

Further, because maintenance of the cross-claim furthers, rather than thwarts, ERISA's objectives, the cross-claim cannot be void as against public policy. For its public

---

[7]Simplicity and the Plan argue that First Health was a fiduciary or made itself one by making discretionary decisions regarding Samaritan's claim, and that as a co-fiduciary it can be sued by other fiduciaries for indemnification under 29 U.S.C. § 1105. But § 1105 provides for joint liability among fiduciaries *for a breach of fiduciary duty*, not for the payment of benefits. 29 U.S.C. § 1105(a) ("[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsiblity of another fiduciary with respect to the same plan in the following circumstances . . . ."); *see Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) ("Courts applying trust law principles have implied federal common law rights between defaulting fiduciaries.") Simplicity and the Plan have not alleged in their cross-claim that First Health was a fiduciary and breached its fiduciary duties, but rather that *the MSA* entitles them to indemnification.

18

policy argument, First Health points to 29 U.S.C. § 1110(a), which reads that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty *under this part* shall be void as against public policy." § 1110(a) (emphasis added). The italicized language means that § 1110(a) applies to relief from fiduciary obligations and duties, not relief from payment of benefits to plan participants. The relevant "part" is "Part 4–Fiduciary Responsibility," meaning §§ 1101 through 1114, including §§ 1104, 1105, and 1109 regarding fiduciary duties. Thus, § 1110(a) does not apply to Simplicity and the Plan's cross-claim. Moreover, by its terms § 1110(a) could apply only to a fiduciary, i.e., Simplicity, and not to the Plan itself.

That leaves First Health's final argument: that Simplicity and the Plan can prove no causation and suffered no damages related to First Health's alleged usurpation of Simplicity's role in determining appeals. First Health offers no citation to authority for the proposition that causation is an element of a claim for breach of contract or indemnification pursuant to contract, and the court knows of no such requirement.

As for the argument that Simplicity and the Plan suffered no damages, First Health proffers the expert report of Simplicity and the Plan's own expert, Dr. Bruce Herman, to argue that Simplicity would have denied benefits just as First Health did. Herman opined that Bowe required skilled nursing care only from October 27, 1995, through November 7, 1995, and thereafter needed only custodial care as defined in the plan language. (Tidwall Aff., Ex. 2 at 2-3.)

Generally, expert reports would be hearsay, as they are prior statements offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). To get an expert's opinion into the record for summary judgment usually involves use of an affidavit or deposition

testimony. However, because First Health proffers its opponent's expert report against that opponent, the report can be considered an admission by a party-opponent, which falls outside the hearsay definition. Fed. R. Evid. 801(d). The statement is offered against a party and, by virtue of the party's proffering of the expert's opinion as part of its case, is either "a statement of which the party has manifested an adoption or belief in its truth," "a statement by a person authorized by the party to make a statement concerning the subject," or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(B), (C), (D).

Simplicity and the Plan offer no evidence in response. Lacking such evidence, they have failed to rebut First Health's. Therefore, the question is whether First Health's evidence is enough to establish that summary judgment should be granted.

Dr. Herman opines that after November 7, 1995, Bowe's care was custodial, not requiring skilled nursing. This supports a finding that the expenses for which Samaritan seeks reimbursement would not have been considered medically necessary and would thus fall outside the scope of reimbursable expenses under the Plan.

But Dr. Herman's report is *not* enough evidence to support a finding that Simplicity and the Plan would actually have denied benefits just as First Health did, had First Health notified Simplicity of Samaritan's appeal. As Simplicity and the Plan point out, Dr. Herman says nothing about whether Simplicity would have denied the appeal and nothing about the MSA's appeal notification requirements. First Health provides no evidence, such as an affidavit or deposition testimony of someone at Simplicity who would have reviewed Samaritan's appeal, indicating what the outcome of an appeal would have been. While it is

20

*possible* that Simplicity would have denied the appeal, that is not a foregone conclusion and such speculation cannot underlie a grant of summary judgment. Perhaps the Plan would have compromised Samaritan's claim or suggested some form of mitigation or partial payment in order to avoid future litigation. The consequences of the lack of notice cannot be determined based on Dr. Herman's report alone.

Therefore,

IT IS ORDERED that First Health's motion for summary judgment is granted as to the claim brought by Samaritan, and that claim is dismissed.

IT IS ORDERED that First Health's motion for summary judgment is denied as the cross-claim of Simplicity and the Plan.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

21